UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES PERRY,

        Petitioner,

                                        CASE NO. 5:11-CV-13960

v.                                   HONORABLE JOHN CORBETT O'MEARA
                                   UNITED STATES DISTRICT JUDGE

DEBRA SCUTT,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

James Perry, (Petitioner"), presently on parole supervision with the Michigan Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Stuart G. Friedman, petitioner challenges his conviction for assault with intent to commit criminal sexual conduct involving penetration, M.C.L.A. 750.520g(1).  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

Petitioner was originally charged with two counts of first-degree criminal sexual conduct, two counts of third-degree criminal sexual conduct, and in a separate case with one count of domestic violence for a series of sexual and physical assaults upon his 21 year old stepdaughter.  Pursuant to a plea agreement, petitioner pleaded *nolo contendere* to a reduced charge of assault with intent to commit sexual conduct involving penetration,

in exchange for which the remaining charges were dismissed against petitioner. (Tr. 1/28/2008, pp. 4-7).

Petitioner stipulated to the use of the police report to establish the factual basis for his plea.  The report indicated that the victim had "red marks on her right neck area and a scrape on her chest area."   The victim informed the police that petitioner "grabbed her around the throat and threw her down on the apartment floor."  The police noted that the victim was visibly frightened.  The victim told the police that petitioner had been forcing her to engage in sexual intercourse for about a month, most recently on October 1, 2007. At this point, the police noticed petitioner come out of the apartment complex.  When the police asked petitioner how the victim had received the marks on her neck and chest, petitioner put his hands out as though he was grabbing at the victim's breasts with both hands.   Petitioner admitted to the police that he had sex with his stepdaughter two or three times. (*Id.,* pp. 11-14). [1]

On March 24, 2008, the trial court sentenced petitioner to forty months to ten years in prison, a departure above the sentencing guidelines range of 10-23 months. (Tr. 3/24/2008, pp. 31-32).

---

[1]  Although not made part of the factual basis, the police report indicates that the victim underwent a sexual assault examination, which revealed multiple genital tears, which were consistent with penile penetration.  The victim also had suffered numerous bruises.  The victim also told the police that petitioner had threatened to "ruin her life by getting her fired, taking her car away and taking her mother away" if she reported the sex acts to the police. The victim told police that she only had sex with petitioner "because she was afraid of what he would do."  The victim further indicated that she only went along with petitioner's demands because "she was afraid the suspect might get angry with her if she didn't."  Petitioner admitted to having sex with the victim but claimed that it was consensual. (See Incident Report, Sexual Penetration Penis/Vagina-CSC 1st Degree, pp. 2-4, 8; This Court's Dkt. 9-7, at pp. 244-46, 250 of the docket entry).

2

Petitioner subsequently moved to withdraw his *nolo contendere* plea and also moved for re-sentencing, which the trial court denied. (Tr// 6/19/2009, pp. 14-17; *See also* Order Denying the Defendant's Motion to Withdraw Plea and Request for an Evidentiary Hearing, *People v. Perry,* No. 07-10992 (Bay County Circuit Court, June 30, 2009).

Petitioner's conviction and sentence was affirmed on appeal. *People v. Perry,* No. 293128 (Mich.Ct.App. October 6, 2009); *reconsideration den.* No. 293128 (Mich.Ct.App. December 2, 2009); *lv. den.* 488 Mich. 852; 787 N.W. 2d 481 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Michigan law unconstitutionally punishes consensual sex between a stepfather and his adult stepdaughter.

II. The Petitioner's plea was involuntary where the defendant's plea was induced by materially inaccurate advice about the state of the law.

III. The petitioner's plea was involuntary where counsel stipulated to aggravating factors which the defendant not only did not consent to, but actively opposed.  The defendant pleaded *nolo contendere* believing he was merely not contesting that consensual sex with a person within the prohibited range of affinity was illegal; counsel, however, stipulated to consideration of facts which were subsequently accepted as establishing forcible rape of the complainant.

IV. Defense counsel was ineffective within the meaning of the constitution where counsel not only failed to object to incorrectly scored sentencing guidelines, but affirmatively waived the issue.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

3

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855,

1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the  Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5

5

(1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

### A.  Claim # 1.  The challenge to the constitutionality of Michigan's criminal sexual conduct statutes.

Petitioner initially claims that Michigan's criminal sexual conduct statutes are unconstitutional because they punish consensual acts of incest between a parent or stepparent and a child or stepchild.  Petitioner contends that the Supreme Court case of *Lawrence v. Texas,* 539 U.S. 558 (2003) establishes a constitutional right to engage in consensual acts of incest.  It is unclear whether petitioner is challenging the constitutionality of the original criminal sexual conduct charges that he was charged with, the constitutionality of the assault with intent to commit sexual conduct involving penetration charge that he was convicted of, or both.

The Michigan courts' rejection of petitioner's constitutional claim was not an unreasonable application of *Lawrence v. Texas,* so as to entitle petitioner to habeas relief. *See Love v. Swanson,* 663 F. 3d 258, 263-64 (6th Cir 2011); *cert. den.* No. 2012 WL

6

733864 (U.S. May 14, 2012)(state court's determination that petitioner's incest

conviction for engaging in consensual sexual conduct with his adult stepdaughter did not

violate his substantive due process right to sexual privacy was not unreasonable

application of clearly established federal law in *Lawrence v. Texas*, and thus did not

warrant federal habeas relief).  In *Love,* the Sixth Circuit rejected a similar constitutional

challenge to Ohio's incest statute.  In so ruling, the Sixth Circuit noted that the Supreme

Court in *Lawrence* did not address the constitutionality of state incest statutes, but only

those laws which prohibited homosexual sodomy. *Id.,* at 264 (citing *Muth v. Frank,* 412

F. 3d 808 (7th Cir. 2005)).  The Supreme Court in *Lawrence* appeared to distinguish laws

that prohibit incest from laws that prohibit homosexual sodomy "when it emphasized

that '[t]he present case does not involve ... persons who might be injured or coerced or

who are situated in relationships where consent might not easily be refused [.]'" *Id.,*

(quoting *Lawrence,* 539 U.S. at 578).  The Sixth Circuit noted that:

> Unlike sexual relationships between unrelated same-sex adults, the
> stepparent-stepchild relationship is the kind of relationship in which a person
> might be injured or coerced or where consent might not easily be refused,
> regardless of age, because of the inherent influence of the stepparent over the
> stepchild.

*Lawrence,* 663 F. 3d at 264.

The State of Michigan's "interest in criminalizing incest is far greater and much

different than the interest of the State of Texas in prosecuting homosexual sodomy."

*Lawrence,* 663 F. 3d at 264.  Michigan's interest in criminalizing incest involves the

protection of "the family from the destructive influence of intra-family, extra-marital

sexual contact.  This is an important state interest that the *Lawrence* Court did not

invalidate." *Id.*  Therefore, the Michigan courts' rejection of petitioner's claim was not

an unreasonable application of clearly established Supreme Court law that would entitle

petitioner to habeas relief. *Id.*

**B.  Claims # 2, 3, and 4.  The ineffective assistance of counsel claims.**

The Court will consolidate petitioner's ineffective assistance of counsel claims

together for judicial economy.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance was

so deficient that the attorney was not functioning as the "counsel" guaranteed by the

Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the

defendant must overcome a strong presumption that counsel's behavior lies within the

wide range of reasonable professional assistance. *Id.*  In other words, petitioner must

overcome the presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that

such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant

must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at

694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different

result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379

8

(6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485

9

(2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel' s actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a case that took place" four years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

In his second claim, petitioner contends that his trial counsel was ineffective in advising him that he had no defense to the original criminal charges and thus petitioner should plead *nolo contendere* to the assault with intent to commit sexual conduct involving penetration charge. In his related third claim, petitioner contends that his trial counsel was ineffective for stipulating to facts which established that petitioner had forcibly raped his stepdaughter, when petitioner had been lead to believe by defense counsel that he was merely pleading *nolo contendere* to having consensual sex with a person within the prohibited range of affinity, i.e., his stepdaughter.

As an intial matter, respondent contends that petitioner's second claim is unexhausted because it was never presented to the state courts. A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S.

10

129, 131 (1987).  A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher*, 200 F.Supp.2d 725, 744 (E.D.Mich.2002); 28 U.S.C. § 2254(b)(1)(A)(c).  Because second petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function.  Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place.  Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks.  The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve.  A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger.  The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore,* 131 S. Ct. 733, 741 (2011).

The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage.  Failure to respect the latitude *Strickland* requires can create at

11

least two problems in the plea context.  First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real.  The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision.  There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial.  In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel.  AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect.  *Strickland* allows a defendant "to escape rules of waiver and forfeiture,".  Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*.  The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo,* 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty or *nolo contendere* plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Premo,* 131 S. Ct. at 743 (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59.  The Sixth Circuit has interpreted *Hill* to require a federal habeas

12

court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty or *nolo contendere*, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty or *nolo contendere*, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty or *nolo contendere* if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F. 3d 368, 373 (6th Cir. 2012)(quoting *Padilla v. Kentucky*, 130 S. Ct. at 1485).

Petitioner has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading *nolo contendere*. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005). Petitioner was facing up to life in prison on the original first-degree criminal sexual conduct charges and up to fifteen years in prison on the third-degree

13

criminal sexual conduct charges.  Neither of these charges allow for a sentence of

probation. *See* M.C.L.A. 771.1(1).  Trial counsel was able to negotiate a plea agreement

with the prosecutor that permitted petitioner to plead *nolo contendere* to a reduced

charge of assault with intent to commit sexual conduct involving penetration, which

carries up to ten years in prison and unlike the original charges, is probationable.

Counsel also obtained a dismissal of an additional domestic violence charge.

      The evidence of petitioner's guilt to the original first and third-degree criminal

sexual conduct charges was substantial.  Although petitioner claims that the victim

consented to have sex with him, there was substantial evidence of force to support

petitioner's first-degree criminal sexual conduct charges.  The victim informed the police

that petitioner had forced her to engage in sexual intercourse with him, most recently on

October 1, 2007.  The victim told the police that she did not want to have sex with

petitioner on this occasion, but he pulled down her pants and sexually penetrated her.

The victim subsequently underwent a sexual assault examination, which revealed

multiple genital tears, which were consistent with penile penetration.  The victim also

had suffered numerous bruises.  The victim also told the police that petitioner had

threatened to "ruin her life by getting her fired, taking her car away and taking her

mother away" if she reported the sex acts to the police.  The victim told police that she

only had sex with petitioner "because she was afraid of what he would do" and only

went along with petitioner's demands because "she was afraid the suspect might get

angry with her if she didn't." This evidence would tend to negate petitioner's claim that the sex acts between him and his stepdaughter were consensual. Because of the evidence contained in the police reports which suggested that petitioner had forcibly raped his stepdaughter, trial counsel could reasonably have feared that petitioner could have been convicted of first-degree criminal sexual conduct, which carries up to life in prison, had he proceeded to trial. Under the circumstances, trial counsel's advice to plead *nolo contendere* to a reduced charge of assault with intent to commit sexual conduct involving penetration was a reasonable strategy. *See Bonior v. Conerly,* 416 Fed. Appx. 475, 479 (6th Cir. 2010).

Moreover, even if this Court were to accept that the sexual acts between petitioner and his stepdaughter were consensual, petitioner would still be unable to establish that it would have been rational for him to reject the plea agreement in this case. Petitioner was also originally charged with two counts of third-degree criminal sexual conduct under a theory that he engaged in sexual penetration with a person who is related to him by affinity within the third degree. *See* M.C.L.A. 750.520d(1)(d). Consent is not a defense to this crime in Michigan. *See People v. Goold,* 241 Mich.App. 333, 335, n. 1; 615 N.W.2d 794 (2000). As mentioned above, such acts are also not protected under the federal constitution. In this case, there was overwhelming evidence that petitioner had engaged in acts of sexual penetration with the victim, so as to support, at the very least, a conviction for third-degree criminal sexual conduct. In addition to the victim's

15

statements to the police and the medical examination which would corroborate the allegations of sexaul penetration, petitioner himself admitted to the police that he had sexual intercourse with the victim several times.  Because consent is not a defense to the charge of third-degree criminal sexual conduct, there was overwhelming evidence of petitioner's guilt to the two third-degree criminal sexual conduct charges.

Given the substantial evidence of guilt against petitioner to support a conviction of at least the two counts of third-degree criminal sexual conduct, if not the first-degree criminal sexual conduct charges, petitioner is unable to show that but for counsel's alleged deficiencies, he would not have pleaded *nolo contendere* to the reduced charge of assault with intent to commit sexaul penetration but would have insisted on going to trial on the original charges. *See McAdoo v. Elo,* 365 F.3d 487, 499-500 (6th Cir. 2004). Petitioner is not entitled to habeas relief on his second and third claims.

In his fourth claim, petitioner alleges that his trial counsel was ineffective for failing to object to the scoring of several of the offense variables under the Michigan Sentencing Guidelines.

Although the Supreme Court has never expressly extended *Strickland* to noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d 140, 145 (6th Cir. 1988).  However, the AEDPA standard of review found in 28 U.S.C. § 2254 (d)(1) prohibits the use of lower court decisions in determining whether the state

16

court decision is contrary to, or an unreasonable application of, clearly established federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002). The Ninth Circuit has noted, "[W]hen the Supreme Court established the test for ineffective assistance of counsel claims in *Strickland,* the [Supreme] Court expressly declined to 'consider the role of counsel in an ordinary sentencing, which ... may require a different approach to the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(quoting *Strickland,* 466 U.S. at 686). Because the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context, there is no clearly established federal law regarding ineffective assistance of counsel claims in noncapital sentencing cases, so as to provide petitioner with a basis for habeas relief on his claim. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9th Cir. 2006).

Assuming that *Strickland* applies to noncapital sentencings, petitioner is unable to show that he was prejudiced by counsel's failure to object to the scoring of these sentencing guidelines variables. At the time of sentencing, the trial judge departed above the sentencing guidelines range as it had been scored and sentenced petitioner to forty months to ten years in prison. (Tr. 3/24/2008, p. 32). In rejecting petitioner's motion for re-sentencing, the trial judge indicated that even if the offense variables had been objected to, the guidelines range would have remained the same. More importantly, the trial judge noted that his reasons for departing above the guidelines range had not

17

changed and "those would remain the same regardless [of how the guidelines were scored]." (Tr// 6/19/2009, p. 17).

In light of the fact that the trial court would have departed above the sentencing guidelines range and imposed the same sentence even if counsel had objected to the scoring of the guidelines variables, counsel's failure to do so did not prejudice petitioner, so as to entitle petitioner to relief on his ineffective assistance of counsel claim. *See U.S. v. Kirkham,* 295 Fed. Appx. 910, 913 (10th Cir. 2008). Petitioner is not entitled to habeas relief on his fourth claim.

### IV.  Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a

18

final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28

U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate

of appealability because he has failed to make a substantial showing of the denial of a

federal constitutional right with respect to any of the claims. *See Allen v. Stovall,* 156 F.

Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

s/John Corbett O'Meara
United States District Judge

Date:  May 23, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of
record on this date, May 23, 2012, using the ECF system.

s/William Barkholz
Case Manager